UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LURLEEN Y. HERNANDEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendant.<br>_____/ | No. C-13-02392 DMR<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AN AWARD OF BENEFITS** |

Plaintiff Lurleen Y. Hernandez moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Hernandez not disabled and therefore denied her application for benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. The Commissioner cross-moves to affirm. For the reasons stated below, the court grants Plaintiff's motion and denies the Commissioner's motion, and remands the action to the Commissioner for an award of benefits.

**I. Procedural History**

Plaintiff states that she became disabled on January 2, 2008, when she was admitted to the emergency room with a variety of complaints, saying among other things that she felt "somewhat unraveled" by the effects of 25 years of methamphetamine use. (Administrative Record ("A.R.") 119, 204-209.) Plaintiff claims that she suffers from schizophrenia, paranoia, and depression delusional disorder. (A.R. 138.) Plaintiff filed an application for Social Security Supplemental

Income (SSI) benefits on June 19, 2009 (A.R. 119), which was initially denied on October 29, 2009 (A.R. 41-45) and again on reconsideration on July 2, 2010 (A.R. 48-53). On November 24, 2010, Plaintiff filed a request for a hearing before an Administrative Law Judge (ALJ). (A.R. 57-58.)

After the June 19, 2012 hearing, ALJ Caroline H. Beers issued a decision finding Plaintiff not disabled. (A.R. 20-28.) Noting that Plaintiff's methamphetamine dependence appeared to be in remission, the ALJ determined that Plaintiff suffers from schizoaffective disorder, chronic obstructive pulmonary disease (COPD), hypertension, hypothyroidism, depression, trigger finger of the left middle finger, and anxiety, which are severe impairments. (A.R. 22, 25.) Although the ALJ determined that Plaintiff is unable to perform her past work, she found that Plaintiff has the following residual functional capacity (RFC) to perform "medium work":

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that she is limited to simple tasks consistent with SVP 2, entry level work; she can maintain occasional interaction with co-workers, and no public contact; she can make simple, work-related decisions with occasional workplace changes; she must avoid concentrated exposure to dusts, odors, fumes, gases, and poor ventilation.

(A.R. 24.) Relying on the opinion of a vocational expert (VE) who testified that an individual with such an RFC could perform a significant number of jobs existing in the economy, the ALJ concluded that Plaintiff is not disabled. (A.R. 28.)

Plaintiff filed a request for review of the hearing on September 24, 2012 (A.R. 16), which the Appeals Council denied on March 26, 2013. (A.R. 6-8.) The ALJ's decision therefore became the final decision of the Commissioner. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Plaintiff then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II. Issues Presented

1. Whether the ALJ erred in failing to consider the opinion of Plaintiff's examining physician;
2. Whether the ALJ erred in posing hypothetical questions to the VE that did not incorporate all of Plaintiff's mental restrictions, as found by Plaintiff's examining physician; and
3. Whether the ALJ improperly rejected the credibility of Plaintiff's testimony.

## III. Standard of Review

2

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. The ALJ's underlying determination "will be disturbed only if it is not supported by substantial evidence or it is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation marks omitted). "Substantial evidence" is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" but less than a preponderance. *Id.* When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, resolving ambiguities, and drawing inferences logically flowing from the evidence. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982); *Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## IV. Discussion

**A.   The ALJ's Evaluation of the Medical Opinions**

With regard to Plaintiff's mental impairments, the administrative record contains opinions by Plaintiff's treating physician, Yasin Mansoor, M.D., examining physician Robert Bilbrey, Ph.D.[1],

---

[1] For purposes of this opinion, the term "physician" or "doctor" includes psychologists such as Dr. Bilbrey who do not have an M.D. *See* 20 C.F.R. § 404.1527(a)(2) (defining "medical opinions" as "statements from physicians and psychologists and other acceptable medical sources," and prescribing the respective weight to be given the opinions of treating sources and examining sources); *see also Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir. 1996).

3

1   and non-treating, non-examining physicians Norman Zukowsky, Ph.D. and L.J. Gottschalk, M.D.[2]
2   (A.R. 236-38 (Bilbrey), 239-41 (Zukowsky), 313-15 (Gottschalk), 440-44 (Mansoor).)  It also
3   contains treatment records from Plaintiff's mental health providers, including notes from Dr.
4   Mansoor.[3]  (A.R. 278-312, 341-355, 425-438.)

5       Dr. Mansoor, who had been treating Plaintiff for nearly two years at the time of his April
6   2012 opinion, diagnosed Plaintiff with paranoid schizophrenia, noting that she hears "voices talking
7   to her on and off for [the] last several [years]."  (A.R. 440.)  He opined that Plaintiff would have
8   moderate and marked limitations in several work-related functions, including a marked limitation in
9   the ability to "complete a normal workday/workweek without interruptions from psychologically
10  based symptoms," (A.R. 441), and that Plaintiff was "[i]ncapable of even 'low stress' jobs." (A.R.
11  443.)  He also noted that drugs and/or alcohol abuse were not a "contributing factor material to
12  [Plaintiff's] disability."  (A.R. 443.)

13      Dr. Bilbrey, an independent consultative examiner retained by the Social Security Agency,
14  performed a comprehensive psychiatric evaluation of Plaintiff in September 2009.  (A.R. 236-38.)
15  He noted her history of drug use, and diagnosed Plaintiff with paranoid schizophrenia, depression,
16  and polysubstance dependence in partial remission.  (A.R. 238.)  Dr. Bilbrey opined that Plaintiff
17  "would not be able to complete a normal workday or workweek without interruptions from her
18  psychiatric symptoms," nor would she "be able to deal with the usual stressors encountered in
19  competitive work."  (A.R. 238.)

20      In contrast with the opinions of Drs. Mansoor and Bilbrey, non-examining physician Dr.
21  Zukowsky opined in October 2009 that Plaintiff could perform short and simple instruction work,
22  attend work regularly and sustain a basic work routine, with the limitation that she "should not be

---

[2] The opinions of Drs. Sheehy and Gottschalk appear in the same document, and the document includes opinions regarding Plaintiff's mental and physical impairments. (A.R. 313-15.) It appears that Dr. Gottschalk offered an opinion regarding Plaintiff's mental impairments, endorsing the October 29, 2009 opinion of reviewing physician Dr. Zukowsky, although it is not clear whether Dr. Sheehy also endorsed the Zukowsky opinion. (*See* A.R. 315.) In any event, the court will refer to this document as Dr. Gottschalk's opinion.

[3] With respect to the medical opinion evidence, Plaintiff only challenges the ALJ's failure to consider Dr. Bilbrey's opinion. However, the court must "consider the entire record as a whole" when reviewing the ALJ's decision under the substantial evidence standard. *Robbins*, 466 F.3d at 882.

4

expected to work with the public." (A.R. 241.) Dr. Gottschalk's June 2010 opinion endorsed Dr. Zukowsky's conclusion. (A.R. 313, 315.)

In her decision, the ALJ stated that she gave limited weight to Dr. Mansoor's opinion that Plaintiff was "[i]ncapable of even 'low stress' jobs," stating that his evaluation was not supported by the treatment records, which "demonstrate that [Plaintiff] fares well when she is compliant with medication." The ALJ characterized Dr. Mansoor's role as "prescrib[ing] medication and see[ing] the claimant for brief appointments for the prescriptions," and did not cite or analyze any of Dr. Mansoor's detailed treatment notes. (A.R. 26; *see* A.R. 345-346, 425-438.) The ALJ gave significant weight to Dr. Gottschalk's June opinion, in which Dr. Gottschalk, a non-examining physician, agreed with Dr. Zukowsky's opinion that Plaintiff could perform "simple work with no public contact." (A.R. 26; *see* A.R. 313, 315.) However, the ALJ did not discuss or even acknowledge Dr. Bilbrey's opinion in her decision. Plaintiff argues that the ALJ misapplied the regulatory standard for considering physicians' opinions when she disregarded Dr. Bilbrey's opinion without basis, in favor of the medical opinions of non-treating, non-examining physicians.

### 1. Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id.*

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes*, 881 F.2d at 751 (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*,

5

*Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188. If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(d)(4).

### 2. Analysis

Following Dr. Bilbrey's September 26, 2009 examination of Plaintiff, he made a functional assessment. He wrote, in part:

> [Plaintiff] would have moderate difficulty accepting instructions from supervisors but would not be able to interact with coworkers and the public. . . . She would have moderate difficulty maintaining regular attendance in the workplace and would not be able to complete a normal workday or workweek without interruptions from her psychiatric symptoms. She would not be able to deal with the usual stressors encountered in competitive work.

6

(A.R. 238.) In her analysis, the ALJ made no mention of Dr. Bilbrey's report, instead basing her conclusion that Plaintiff could perform "medium work" with some limitations on the report of non-examining physician Dr. Gottschalk. (A.R. 24-26.)

If an examining physician's opinion is contradicted by that of another doctor, the ALJ may not reject it without providing "'specific and legitimate reasons' supported by substantial evidence in the record." *Lester*, 81 F.3d at 830. "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison v. Colvin*, – F.3d –, 2014 WL 3397218, at *14 (9th Cir. July 14, 2014) (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). Here, the ALJ did not address whether Dr. Bilbrey's assessment of Plaintiff's ability to work was uncontradicted or not; she simply ignored his opinion. Given the requirements governing the treatment of an examining physician's opinion, the court finds that the ALJ erred because she neither explicitly rejected Dr. Bilbrey's opinion nor set forth specific, legitimate reasons for crediting Dr. Gottschalk over Dr. Bilbrey. *See Garrison*, 2014 WL 3397218, at *14 ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, [the ALJ] errs.").

The Commissioner concedes the ALJ failed to address Dr. Bilbrey's opinion in her decision, but argues that this amounts to harmless error, offering various *post hoc* explanations for why Dr. Bilbrey's opinion was not supported by the medical records. (Def.'s Mot. 4-5.) In order for an error to be harmless, it must be "clear from the record that [it] was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038. Here, the court cannot say that the ALJ's error was harmless. The Commissioner argues that Dr. Bilbrey's opinion was "wholly unsupported" by treatment records which show that Plaintiff "fares well when she is compliant" with her medication. (Def.'s Mot. 4.) The court disagrees. Upon close review of Plaintiff's treatment records, it appears that they actually indicate "[c]ycles of improvement and debilitating symptoms" that are not inconsistent with Dr. Bilbrey's assessment. *See Garrison*, 2014 WL 3397218, at *18. For example, treatment records periodically note improvement in Plaintiff's mood with medication and that her response to medication was "good." (A.R. 219, 228, 286, 290, 306.)

7

However, despite her response to medication, she continued to complain of auditory hallucinations. (A.R. 228 ("their [sic] talking to me is [sic] last couple days = critical"), 229, 297, 300, 306, 310, 343, 345, 346, 349.) While she occasionally reported that she was able to ignore the voices (A.R. 229, 310, 343), or was not "talking to them anymore" (A.R. 425), in September 2010 she reported that in addition to depression and difficulties with focus and concentration, "people talk and laugh at her" and she thinks a doctor or doctors are "part of the conspiracy to kill her or the [illegible] or her ex-husband's plans." (A.R. 349.) This is echoed in Dr. Bilbrey's opinion, in which he notes that the medications take away most, but not all, of Plaintiff's hallucinations. (A.R. 236.)

The treatment records also reflect consistent complaints of severe depression which appear to worsen over time. She was diagnosed with recurrent, severe major depressive disorder with psychotic features in June 2009. (A.R. 297-301.) Early records show that her medications were periodically adjusted and that she experienced improvement. (A.R. 219, 228, 281, 290.) However, in 2012, Dr. Mansoor noted that despite Plaintiff's compliance with medications her response to them was "inadequate." (A.R. 427, 433, 435.) On three occasions he noted that Plaintiff was sad and "severely depressed" and "stays in bed," once sleeping for two days straight. (A.R. 427, 431, 433.) This supports Dr. Bilbrey's opinion that Plaintiff "would have moderate difficulty maintaining regular attendance in the workplace and would not be able to complete a normal workday or workweek without interruptions from her psychiatric symptoms." (A.R. 238.)

The treatment records also contain Global Assessment of Function (GAF) scores. The Ninth Circuit recently noted that GAF scores, which are "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment," "may be a useful measurement." *Garrison*, 2014 WL 3397218, at *4 n.4 (quoting *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998) (quotation marks omitted)). A GAF score between 41 and 50 "describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning." *Id*. A GAF score between 51 to 60 "describes 'moderate symptoms' or any moderate difficulty in social, occupational, or school functioning.'" *Id*. (internal citations omitted). Plaintiff's GAF scores ranged from a low of 45, assessed in September 2010 and April 2012 (A.R. 353, 427), to a high of 55 in December 2008 (A.R. 225). She was assessed a GAF

1  score of 50 in February, March and April of 2012. (A.R. 429, 431, 433, 435.) Further, in 2012, the
2  last year for which treatment records are available, her prognosis alternated between "fair" and
3  "poor." (A.R. 426, 428, 430, 434.)

4　　　　In sum, Plaintiff's treatment records indicate that her symptoms "wax[ed] and wane[d] in the
5  course of treatment," and the Ninth Circuit has cautioned that in such circumstances, "it is error for
6  an ALJ to pick out a few isolated instances of improvement over a period of months or years and to
7  treat them as a basis for concluding a claimant is capable of working." *See Garrison*, 2014 WL
8  3397218, at *18 ("Reports of 'improvement' in the context of mental health issues must be
9  interpreted with an understanding of the patient's overall well-being and the nature of her
10 symptoms." (citation omitted)). Therefore, the treatment records, which show "[c]ycles of
11 improvement and debilitating symptoms," *see id.*, support Dr. Bilbrey's opinion about Plaintiff's
12 ability to work. Moreover, his opinion that Plaintiff was unable to complete a normal workday or
13 workweek or deal with the "usual stressors" of work was consistent with Dr. Mansoor's conclusion
14 that Plaintiff would have "marked" difficulties in maintaining regular attendance and maintaining a
15 normal workday or workweek, and that she would be incapable of holding even a "low stress" job.
16 The ALJ rejected Dr. Mansoor's opinion on the grounds that it was not supported by other evidence
17 in the record. (A.R. 441–43.) Her error in failing to consider Dr. Bilbrey's opinion was thus critical
18 to determining Plaintiff's accurate RFC.[4]

19 **B.    The ALJ Improperly Discounted Plaintiff's Testimony**

20　　　　Next, Plaintiff argues that the ALJ failed to properly consider her own testimony as to her
21 subjective symptoms. Specifically, Plaintiff argues that the ALJ erred in discounting her testimony
22 as not credible because the ALJ failed to identify evidence showing that specific testimony was not
23 credible.

---

[4] Given the court's conclusion that the ALJ erred in failing to consider Dr. Bilbrey's opinion, the court also finds that the ALJ failed to pose a hypothetical to the VE that accurately reflected Plaintiff's mental limitations. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) ("Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant").

9

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5) (A)). Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 722 (citation omitted). If an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id.* at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (en banc) (citations omitted). Absent affirmative evidence that the claimant is malingering,[5] the ALJ must

---

[5] The ALJ did not conclude that Plaintiff was a malingerer. (*See also* A.R. 440 (Dr. Mansoor's opinion that Plaintiff is not a malingerer).)

provide specific "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1283-84.

As the ALJ noted, Plaintiff testified about her daily activities, stating that she drives to the store two to three times per week, takes public transportation, and is able to tend to her personal hygiene and do light housework. (A.R. 24.) The ALJ noted that Plaintiff testified that "she hears voices, and that the voices are always there," and that the voices "tear [her] down." (A.R. 24-25.) According to Plaintiff, the voices "never really go away," and that "it depends on a daily basis . . . whether or not [she's] going to respond to them." (A.R. 462.) She described a recent incident where she confronted two women in a store whom she could hear "talking about the way [Plaintiff] was dressed . . . but [their] mouths weren't moving." (A.R. 471.) She also testified about her history of methamphetamine use, and stated that she last used drugs in 2008. (A.R. 24.) According to Plaintiff, "when [she] took the methamphetamine it made [her] not listen to the voices," although she still heard them. (A.R. 464.) She stated that she has panic attacks two to three times per week. (A.R. 25.) When she has a panic attack, she either takes Klonopin, which causes her to fall asleep almost immediately, or takes deep breaths and sits quietly until the panic attack goes away, which takes ten to fifteen minutes. (A.R. 468.)

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not credible to the extent they are inconsistent with" the ALJ's assessed RFC. (A.R. 25.) However, the ALJ did not provide specific "clear and convincing" reasons to reject Plaintiff's testimony. The only reason offered by the ALJ to discount Plaintiff's credibility is that Plaintiff's "minimal work history . . . diminishes her credibility." (A.R. 25.) Elsewhere in her decision, the ALJ mentioned Plaintiff's testimony that she had worked in housekeeping and as an in-home attendant (A.R. 24), but nowhere does the ALJ explain *why* Plaintiff's work history impacted her credibility, nor did she tie this finding to any of

1  Plaintiff's statements about her symptoms.[6] *See Greger*, 464 F.3d at 972. The ALJ did not identify
2  any other evidence that she found undermined Plaintiff's complaints. Although she described
3  Plaintiff's daily activities, she did not explain how they impacted Plaintiff's credibility.
4      Moreover, there is support in the record for Plaintiff's statements about her symptoms. For
5  example, Dr. Mansoor, Plaintiff's treating psychiatrist, wrote that Plaintiff had heard voices talking
6  to her for the past several years, and that her condition worsened when she was stressed. (A.R. 440.)
7  Similarly, Dr. Bilbrey wrote that Plaintiff hears voices, and that medications take away most, but not
8  all, of her hallucinations. (A.R. 236.) Treatment notes from 2009 and 2012 further support
9  Plaintiff's allegations, indicating that Plaintiff continued to complain of hearing voices even while
10 taking medications, although occasionally she reported that she was not responding to the voices
11 anymore. (*See, e.g.*, A.R. 297, 310, 425-429, 433; *see also* A.R. 462 ("it depends on a daily basis . .
12 . whether or not I'm going to respond to them.").)
13     In response, the Commissioner argues that the ALJ outlined Plaintiff's inconsistent
14 statements about her drug use in the decision, and that Plaintiff's "lack of candor" served to discredit
15 Plaintiff's allegations. (Def.'s Mot. 7.) This argument is without merit. First, while the ALJ
16 discussed Plaintiff's history of drug use, she made no statement about a purported lack of candor on
17 Plaintiff's part, nor did she clearly tie Plaintiff's drug use to her credibility finding. The ALJ made a
18 brief statement about a November 2011 treatment note stating that Plaintiff "had been doing better,
19 but was self-medicating with drugs (methamphetamines)," but the court cannot find any support for
20 this in the record. (*See* A.R. 25 (citing A.R. 346).) The evidence the ALJ and the Commissioner
21 cited in support of this claim does not state that Plaintiff was *currently* self-medicating; the evidence
22 states that Plaintiff "*was* self medicating with drugs." (*See* A.R. 345 (cited by the Commissioner,
23 emphasis added), 346 (cited by ALJ in decision; no mention of self-medication).) The treatment
24 note itself makes clear that it is referring to past, rather than current "self-medication":

> 51 year old Latin American Female with diagnosis of schizophrenia, paranoid type
> since 2007. Reported she has been hearing voices since age 25. Never got

---

[6] Plaintiff testified that until 2007, she worked in housekeeping and "home care." (A.R. 456-459.) Her earnings report shows inconsistent yearly wages from 1977 through 2007, and reflects several years in which she did not have any earnings. (A.R. 113-118.)

medication for it until 2007. *Was self medicating with drugs. Drug of choice was methamphetamine. . . . Started on meds in 2007.* Has been doing relatively better. *No substance abuse since.* Currently on a combination of Abilify, Lexapro and Klonopin. Stopped Wellbutrin about 3 weeks ago was not helpful. Did not notice any changes in her symptoms. Still hears voices but not as bad.[7]

(A.R. 345 (emphasis added).) This statement is evidence of Plaintiff's past drug use, which Plaintiff does not dispute, and is consistent with her testimony. (*See* A.R. 464.) There is simply no evidence in the record of Plaintiff's drug use after January 2008, more than four years before the hearing before the ALJ in June 2012. *See* 42 U.S.C. § 423(d)(2)(c) (a claimant is not considered disabled under the Social Security Act if "alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.").

In sum, the court finds that the ALJ did not offer specific, clear, and convincing reasons for rejecting Plaintiff's testimony concerning her mental impairments.

**C.     Remand for Payment of Benefits**

Plaintiff asks the court to determine that she is disabled and remand her case for payment of benefits, rather than remanding the case for the ALJ to conduct further proceedings.

A court may remand a disability case for further proceedings "if enhancement of the record would be useful." It may only remand for benefits, on the other hand, "where the record has been fully developed and further administrative proceedings would serve no useful purpose." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). In determining whether to remand for benefits, the Ninth Circuit has devised a "three-part credit-as-true standard." *Garrison*, 2014 WL 3397218, at *20. Each part of the standard must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

---

[7] The court has translated common medical abbreviations used in the treatment note.

*Id.* A court is required to remand a disability case when, "even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at *21.

Regarding the first factor, whether the record has been fully developed, the Commissioner contends that remand for additional proceedings is necessary in light of record evidence of drug use during Plaintiff's claimed period of disability. Under the Social Security Act, a claimant is not considered disabled if "alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(c). Before assessing whether alcoholism or drug addiction would be a contributing factor to the disability determination, an ALJ must first conduct the five-step disability analysis without trying to separate the effect of the addiction from the other factors contributing to the claimant's disability. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If the ALJ finds that the claimant is disabled, and also finds "medical evidence of his or her drug addiction or alcoholism," then the ALJ should next evaluate whether the claimant would still be found disabled if he or she stopped using the substance. *Id.* (citation and internal alterations omitted).

If there were medical evidence in the record suggesting that Plaintiff had been abusing drugs or alcohol after her disability onset date (January 2, 2008), the court would be required to remand the case to the ALJ for a determination of whether Plaintiff's addiction is a contributing factor material to the disability determination. *See, e.g., Brown v. Astrue*, No. CIV S-09-3125 GGH, 2010 WL 4876591, at *5-8 (E.D. Cal. Nov. 22, 2010) (granting in part plaintiff's motion for summary judgment and remanding case for ALJ to conduct *Bustamante* analysis where record contained "abundant" evidence of plaintiff's substance abuse). The Commissioner contends that clinical notes from Plaintiff's emergency room visit of January 2, 2008 provide such evidence. (*See* Def.'s Mot. 8 (citing A.R. 206, 208).) While the notes establish that Plaintiff was using methamphetamines shortly before the visit, they do not provide evidence that Plaintiff has used or abused drugs since that date. Similarly, as discussed above, the Commissioner's contention that Plaintiff's statement to a doctor that she had self-medicated with methamphetamine is not evidence of her current drug use, but rather only of her *past* drug use. (A.R. 345.) In fact, the ALJ stated that Plaintiff's

14

//

//

methamphetamine use "appears to be in remission since January 2008," after her emergency room visit. (A.R. 25.)

The Commissioner also points to Dr. Bilbrey's evaluation of Plaintiff to establish that there is evidence in the record of Plaintiff's "alcoholism." (Def.'s Mot. 8.) The court disagrees. In the evaluation, Dr. Bilbrey noted that Plaintiff "report[ed] occasional alcohol use and [said that she] does not consider herself an alcoholic." (A.R. 237.) He noted that Plaintiff's eyes were "glassy" and "watery" but were "not red" during the visit. (A.R. 237.) He added, however, that he could not rule out alcohol abuse, and that "further evaluation should focus on [Plaintiff's] alcohol use." (A.R. 238.) This report does not constitute medical evidence of Plaintiff's addiction to alcohol; rather, it highlights an issue that warranted further investigation according to Dr. Bilbrey. The only other evidence in the record of Plaintiff's use of alcohol does not suggest alcoholism. For example, a treatment record dated June 22, 2009 indicates that Plaintiff described her "[o]ccasional use" of an alcoholic beverage at nights, but states that Plaintiff asserted that "alcohol has never been a problem." (A.R. 298.) There is no other evidence in the record supporting the Commissioner's claim that Plaintiff is an alcoholic. The court thus finds that there is no outstanding issue to be determined regarding Plaintiff's use of substances.[8]

As to the second factor, as discussed above, the court finds that the ALJ failed to provide legally sufficient reasons for rejecting Dr. Bilbrey's opinion and Plaintiff's testimony.

In assessing the third element on the issue of whether to remand for benefits, the court must evaluate whether the ALJ would be required to find Plaintiff disabled if the improperly discredited evidence were credited as true. The Ninth Circuit has instructed that "[a]t this stage of the credit-as-true analysis, [the court] [does] not consider arguments against crediting evidence that the ALJ did

---

[8] The court also notes that in his April 2012 opinion, Dr. Mansoor, Plaintiff's treating physician, noted that drugs and/or alcohol abuse were not a "contributing factor material to [Plaintiff's] disability." (A.R. 443.)

//

//

not make. In other words . . . [the court] [does] not consider 'whether the ALJ *might* have articulated a justification for rejecting [a medical] opinion.'[9] *Garrison*, 2014 WL 3397218, at *22 n.29 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000)). The court finds that the ALJ would be required to find Plaintiff disabled even if she accepted Dr. Bilbrey's opinion alone, without considering Plaintiff's testimony. His opinion was that Plaintiff would have moderate difficulty maintaining regular attendance at work, would not be able to complete a normal workday or week without interruptions from her psychiatric symptoms, and would not be able to deal with the usual stress of "competitive work." (*See* A.R. 238.) At the hearing, Plaintiff's counsel asked the VE whether a claimant with "moderate difficulty maintaining attendance in the workplace," where "moderate" meant at least twice per month the claimant would not be present at work, and the "inability to complete a normal workday or workweek without . . . being interrupted by psychiatric symptoms," in addition to the limitations found by the ALJ, would be able to perform any jobs. (A.R. 485-86.) The VE responded that those restrictions would "eliminate work." (A.R. 486.) While Dr. Bilbrey's opinion did not specify what he meant by "moderate," he also opined that Plaintiff would not be able to deal with the stress of "competitive work." The court finds that had the ALJ accepted Dr. Bilbrey's opinion, she would have found that Plaintiff would not have been able to make the adjustment to other work and therefore concluded that Plaintiff qualified as disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4)(v).

Having carefully reviewed the record and concluded that Plaintiff satisfies all three conditions of the credit-as-true rule, and finding "no reason to seriously doubt that [Plaintiff] is, in fact, disabled," *Garrison*, 2014 WL 3397218, at *23, the court thus remands the case to the Commissioner to award Plaintiff disability benefits.

## V. Conclusion

---

[9] Moreover, as discussed above, the court finds that Dr. Bilbrey's opinion is supported by substantial evidence.

16

For the foregoing reasons, the Court finds that the ALJ's decision was not supported by substantial evidence in the record. Accordingly, the court remands this case for payment of benefits.

IT IS SO ORDERED.

Dated: September 16, 2014



_____
DONNA M. RYU
United States Magistrate Judge